Appellant Cross Adelaide by Michael Reagan. Mr. Reagan? Going first? Oh, I'm sorry. We will wait one moment. I'm sorry I didn't realize when we came out that somebody was... No, you're fine. The kids would say, awkward. Right. It has been one of those mornings for more than just one of us. So, Mr. Reagan. Good morning, Your Honor. Thank you very much. May it please the Court, Mr. Swearengin, counsel, my name is Mike Reagan. Together with Lee Smith, who is seated at the council table, I represent the defendant in this case, CC Services, Inc. There are so many issues in this case that it would be hard to usefully touch on them all. I won't. I plan to try to discuss the improper allowance of the amended complaint, the serious instructional error which enhanced the substantial injustice in this case, the impropriety of the punitive damages award, and as part of that discussion I will touch on one of the cross-appeal issues, which is the remitter that was entered by the trial judge. And if time permits, but it may not, I'll talk about the fastened unconstitutional gender discrimination in the jury selection. On the first issue, the court erred in allowing plaintiffs to amend their complaint after a complete summary judgment for defendant had been entered, and after more than five years passed, the one-year statute of limitation had expired. The court further erred in denying defendant's motion to dismiss that amended complaint on the basis of the statute of limitations. The first amended complaint did not relate back to the original complaint. The standard of review on this issue is de novo. Plaintiff's original complaint alleged three specific publications of different statements to three distinct sets of recipients. The court granted summary judgment on that entire complaint on the basis of the unison construction rule, the lack of defamation, and several privileges. And it was only then, when the case was over, that the plaintiffs sought to file an amended complaint alleging a new publication, a different publication, to a different single person. And in that amended complaint, they alleged for the very first time that anyone was present at the November 2nd meeting other than Clancy Janssen, who worked for my client and the plaintiffs, or that Jerry Weissman, who also worked for my client as Janssen's assistant, had heard the statement which the plaintiffs had then complained of for the very first time. That first amended complaint should have been dismissed on the motion relating to the statute of limitation because the statute of limitation in this case had elapsed by many multiples of years and that new allegation of a publication to Weissman did not relate back to the original complaint. The one-year statute of limitations for defamation in Illinois is among the shortest statutes of limitation which we have, and it's short for good reasons. When the offending statements are oral, as they are here, the need for speedy investigation and preservation of evidence is acute. Further, any evidence as to damages often dissipates rapidly. And here, the defendant was completely deprived of protection of that statute. The plaintiffs were present for that statement of which they complained, so there is no reason that they could not have pled it from the very beginning. It's not as if it was something that they had discovered. The relation back statute permits relation back only if the matter in the new complaint grew out of the same transaction or occurrence. So the Supreme Court's opinion in Porter v. Decatur Memorial in 2008 governs, but Porter was not new law. It merely incrementally built upon the statute and significantly, as we'll see in a minute, upon the earlier Supreme Court opinion in Zeh, C.E.H. v. Wheeler. Porter holds that a new claim will be found to relate back if the new allegations show that the events alleged were close in time in subject matter and led to the same injury. Here, the injury alleged in the amended complaint was completely separate from the injury alleged in the original complaint. Defamation, and we go back to fundamentals here, defamation is a tort involving an injury to reputation. That's what we're talking about in these cases. The publications in the original complaint were claimed to be defamatory with respect to completely separate and different audiences than the publication in the first amendment complaint. The causes of action are completely different because they involve different publications, and the subject matter was different because the words were different in each of the publications, and the injury is completely different because the recipients were different. And so when you look at the nature of the tort, which is damage to reputation, and when those earlier publications involved one set of audiences, and then you look at this one, which was narrow casting in modern terms, as narrow as can be, one person, fellow employee, one room, never repeated thereafter. So the conditions reported to apply to permit relation back were not satisfied. And we've suggested in the brief that the Fifth District opinion in Weber v. Coedo is useful on this issue, and there relation back was not permitted when the same defamatory material, which had been published to the county board and other governmental officials, later was given to the newspapers. And the court relied heavily on the fact that the new publication did not afford the same privilege defenses to the defendant that the original plea did. And that's exactly what we have here. We categorically, as a matter of law, had defenses to the original complaint here, which were effective, and yet those types of defenses were not available with respect to this new publication. And there, in Weber v. Coedo, the plaintiff's argument that the defendant knew the publication within the statute of limitation did not save the day. And the court said that the plaintiff misses the point. The defendant must be on timely notice that the publication to the newspapers was the subject of the lawsuit. In translating that to this case, there is no reason to believe, none, despite what you may be told in a few minutes, that the defendant had reason to believe, by virtue of the original complaint in this case, that the publication to Jerry Weisman was any part of this action. So what to do about those cases from the plaintiff's standpoint? So the plaintiff's main argument here is that Weber, which is a highly persuasive case, I respectfully suggest, and other appellate opinions we cite were decided before Porter, which we've also cited. And that distinction is meritorious. Porter relied heavily, for many pages, on the Supreme Court's prior opinion in Zay v. Wheeler. And so that's the Supreme Court harkening back to its own opinion in Zay. And so then when you read Weber, you see that the appellate panel there did exactly the same thing. Before Porter, they said Zay provides the answer here. And acted in accordance with it. So the fact that Weber was decided before Porter, and in many other cases, is of no consequence. Shifting gears here to the next sub-issue in this, the Court also abused its discretion in granting Lief to file the amended complaint under 616A. Now, the issue we just talked about, the standard review, is de novo. Here we're talking about an abuse of discretion. But it was abused. So there's no doubt that the Court possesses the power to allow amendment after a summary judgment. We don't argue to the contrary. Justice Joseph Gordon's opinion in Hartzog, which we've cited, left unresolved the issue of whether when an amendment is sought after summary judgment, that there should be a heightened degree of scrutiny applied. And he suggested there should be, but he didn't have to decide it in the Hartzog opinion. But regardless of the level of scrutiny you apply, the discretionary opinion with all due respect to the trial court was not made correctly here. This case was over. Judgment had been entered in all issues. And under the Loyola Academy factors, which are the classic way of analyzing this thing, discretion should not have lain in favor of amendment. The First Amendment complaint did not cure a defective pleading. The real reason you allow amendments is to solve a problem that's been discerned with respect to pleading. This was a whole new case once he started. I mean, the first case was over, and he said, okay, we have a new publication to a new audience, and I now have a different case. So it didn't cure a defect. Secondly, the defendant here was both prejudiced and surprised. The role of Weissman was not even hinted at in the original complaint. The plaintiff's attorney will say otherwise, but the answer lies in reading the two complaints. And Weissman's name does not appear. The fact that there was an assistant present at the time of this conversation is not alleged in the complaint. And most importantly, equally significantly, the- It does seem like in the judge's order, the order for summary judgment, that the conversation, including Jerry Weissman, I mean, I don't see how- I mean, it doesn't seem like it's a surprise because it's discussed in the judge's order. I'm sorry. So, I mean, I don't know what the surprise is. The surprise is comparing the allegations of the complaint. And so if you look at- And these complaints are short in this case, and they're both in the appendix to the appellate's brief here. So the question is not the perception of the judge later on, Justice O'Brien, but rather what the complaints say. And so to an extent that what you're reading suggests otherwise, then we would respectfully disagree with it. Well, your opponent argues that there was a similar allegation in both of the complaints dealing with the November 2nd conversation between the plaintiff and Clancy Jansen. Isn't that what they- That's what they say. That's what they say, and that's why they say it relates back. That's the key argument for relating back. That's their argument, and it's just not true. So the allegation in the original complaint, paragraph 13 in one of the complaints, and the numbers are different, it's between the two complaints. I think it's paragraph 10 in the other one. In the other one, yes. And so the plaintiff met with Clancy Jansen, at which time the plaintiff was told by Clancy Jansen that after reviewing the records, et cetera, the defendant had caused a terminated plaintiff for stealing, and that she was therefore being terminated. So there's not a word. So that paragraph 13 is the same as paragraph 10. There's not a word in there about anybody else being present, let alone who it might be. So the prejudice here from this, which is part of the loyal academy factors, is the country's witnesses were all very frank. If they didn't remember something, they said they didn't remember, and who could remember six or more years after the event? We've listed the examples in the brief as to the testimony where they had the same from the jury. We don't recall. And the plaintiff was left to have an unfair field day here with Weissman's cryptic notes of the November 2nd meeting. Now picture this. She insisted, sit in on the meeting, you know, we need a witness, which is a common thing, and make some notes. And she made some notes. And yet was survived. It was not the memories of the people, because even the plaintiffs differ as to what was said. And the country people said, look, you know, it's hard to remember back then. And so the word theft appears in the notes, and the plaintiff has the unfair advantage of holding up that single piece of paper and saying, well, this is, you know, indisputably what happened. The amendment was wildly untimely. The applicable statute of limitations had run six times over by the time the plaintiff sought to amend. And the plaintiff had six years' worth of opportunities to amend when they had been present from the very beginning and could have. Shifting again, please, to the instructional area here, which is serious and also prejudicial. The court erred in not giving defendants tenured instructions. In the brief, we talk about three instructions, but I'd like to talk about just two of them here. The first is Defendants Instruction 8, which is at Appendix A28 of our brief, which defined a defamatory statement, and Defendants Instruction 14, which is at A29, which explained the operation of proximate cause in defamation cases. The instruction issue shines a bright spotlight on a central injustice in this case, which is that plaintiffs' counsel at every turn argued that there were economic consequences and damages to the plaintiffs which derived from the fact that they were discharged and which patently had no connection to the statement made to Jerry Weissman or to anyone else for that matter. So this case was effectively transformed into a wrongful discharge case, even though the plaintiffs are employees at will and could be discharged for no reason, a good reason or a bad reason or no reason at all. Yes, thank you. So the Weissman testified that she never told anybody about the statement that was said there, and the plaintiffs admit that they have no contrary proof whatsoever. There's also proof in the record that the relationship between the plaintiffs and Weissman was not altered, and in fact when Weissman was in the courthouse to testify, she and one of the plaintiffs were hugging and talking, etc. So you must have a definition of defamation which talks about harm to the reputation of the plaintiffs, and here there was nothing. There was nothing that told the jury what defamation is, and secondly, there was nothing which instructed that the recoverable damages must be caused by the defamation. Now, in Leiter per se, there are presumed damages, but they still have to flow from the defamation and not from the discharge in this case. And secondly, to the extent that you attempt to prove special damages, which is economic loss of a particular nature, which the plaintiff did here, they tried to prove, then there must be proof of that, adequate proof, and approximate causation, and there was none of that whatsoever. And so the plaintiff argued in the closing argument that they lost their jobs over this, and the plaintiff calculated the damages by saying, okay, they were discharged, they wanted to retire at age 55. The amount of the loss of the job times 17 years or 22 years dependent is equal to such and such, and that's the starting point for the damages. So the plaintiff also, in the conclusion of the punitive damages, said we need punitive damages here to address the personnel practices of the defendant, and that's not the case whatsoever. Sharon has been kind. I'm sure my time has now expired, and if there are any questions, I'll retire. Thank you. Thank you, Mr. Egan. Mr. Sperrington. May it please the Court. Counsel. Quickly, with regard to the issue of timeliness of the complaint, the amended complaint, and whether or not it's related to that. Clearly stated in the original complaint was the allegation made by Mr. Jansen on November 2nd, 2005, that the plaintiffs were guilty of theft, and he had reason to terminate them. That statement was made in the presence of both witnesses. Excuse me, both plaintiffs. Interesting argument that I have not made there is I don't know if that itself is publication, because you have one individual being accused of theft in the presence of the other individual. Interesting question. But there's no question that we know that Jerry Wiseman was there as a witness to hear all that was said. That's in the record. Now. You know, in the relation back, that's not referred to in the paragraph that you're citing, right? The person present. No, it's not. That is true. And under the section allowing for amendment, that section actually in the statute provides that if there's some element that's missing in a complaint, which if added to that complaint, would resolve that issue and supply the missing fact for an element. That is permitted to be done. I didn't quote that portion of the statute in my response, but that is part of the statute. In other words, the fact that Jerry Wiseman's name was not listed in there as a witness can't be corrected through an amendment, and that is permitted under the statute. But you're correct. You're correct that her name was not included. However, what was included was the initial, or the genesis of all of this, this entire case, the initial allegation of theft against the two plaintiffs, and that was alleged in the original complaint. We gave the date of the allegation of theft and who was present other than Jerry Wiseman. But the key to the defamation claim is Wiseman, isn't it? I mean, to the new allegation in the amended complaint. Well, there has to be publication, and so Wiseman is deemed to be the publication. And I believe it is necessary that she be added in the new complaint, but it does not mean that the cause of action does not relate back. That fact that she's not listed in there does not mean that this entire case didn't arise out of that initial transaction on November 2nd between Mr. Jansen and the two plaintiffs. I mean, because what I'm trying to understand is when you have a relation back theory and when you can relate something back and when you can't relate something back, part of it is in fairness to the other side. The other side has some idea, and so this allegation is very different from the previous allegations as far as the publication and the type of defamation, isn't it? I don't think so, Your Honor, because in the November 2nd meeting, he accused them of theft, and that was set forth in the original complaint. So they have notice in the original complaint that the base of our case is that they were defamed, and as a result of that incident, they continue to be defamed in a way that affected their job position. Now, had we known that they didn't understand that we were saying they were defamed in that November 2nd meeting, and we did not, we would have put the language in there concerning the publication and the presence of Weissman. We did not. We failed to do that, and the question is, well, was that prejudicial to the defendants? The defendants were aware from the beginning that that was the genesis of this case. That's the original defamatory act, and they had a record of that in their own files. Janssen had Weissman there for the purpose of keeping notes about the meeting. When were the notes produced in discovery? I think it was shortly before we took depositions, but I do not know the date of that. Before you amended the complaint? Yes. Yesterday? Yes. Well, in the initial discovery, they disclosed that document and produced it. So it's not that the notes just surfaced after? No, the note was known about from before the time we took the depositions of the parties or the witnesses. That was the reason we took Weissman's deposition originally, well before the motion for summary judgment was filed. So everyone was aware at the time the motion for summary judgment was filed that this document existed and that Weissman was present at that meeting at that time. And as the judge in the trial court set forth in his summary judgment order, he was aware that Weissman was present in that meeting because he talked about giving context to the four-cause letter that went to the other agents. So from the very beginning, there could not be any prejudice because we alerted them of the initial statement that was derogatory or defamatory, which was you're guilty of theft, although they testified there was a lot more to it than that. Guilty of stealing, cheating, lying, those all came up. But what we originally alleged in our original complaint was the allegation of theft and then all that came after that. Then during the motion for summary judgment, the court was made aware of this other person being present in the same room and taking notes. That's being Jerry Weissman. And for that reason, I believe that's why we were allowed to amend the complaint because due justice. We had alleged the original conduct, we just hadn't alleged that Jerry Weissman was present. So we were allowed to do that, which is prevented under statute. That's a pretty essential element of the claim, isn't it? It's an essential element of the claim, but they're not taken by surprise and they're not prejudiced by that because they knew about it all along. And it was argued even at the summary judgment motion stage. Who was arguing that the publication was to Weissman? Whether she was present, yes. And also, we filed all of the transcripts of all of the depositions and that all reflected that this document was in existence, that the defendants were aware of it from the beginning because they themselves had produced it as a result of our request for production. What I'm trying to understand is that the amended complaint set out a separate defamation claim because of a publication factor. No. I would disagree with that for this reason. In the original complaint, we allege defamation by Janssen in his statement to both the plaintiffs at the November 2nd meeting that they were guilty of theft. What we did not include, and that was set forth in the original complaint, and that was a part of our complaint against the defendant, that they had accused them of theft. Now, the publication issue comes up later. In our minds, that was all published because it continued to be restated in different ways. We state that it was restated to Ahrens because he admitted that after talking with Janssen, he believed that the plaintiffs were guilty of theft. Bishop believed that they were guilty of theft. They submitted the following day, they issued termination notices to the entire corporate group above them that these two had been terminated for ethical reasons. And they also thereafter sent notices to both the State Agency for Insurance, State Department of Insurance for the State of Illinois, as well as the NASD. But it all relates back to the original occurrence, which was Mr. Janssen accusing them of theft. And the fact that one element wasn't present or alleged doesn't excuse their behavior. It doesn't take them by surprise. They knew about this from the very beginning. So if the Wiseman wasn't in the room and it was just a tape recorder, do you think it was published? Depending on who heard the tape recorder. The publication, yes. Well, that gets back to that question I raised very early on. The presence of each other. How does an employer investigate? Pardon me? How does an employer conduct an investigation? Do you always have to sit down with the employee one-on-one with nobody else in the room? No, I'm not saying that that's wrong. It's not wrong that he had a witness there, that was good. What was wrong was he accused them of theft without investigating it. He brought them in and said... Did Wiseman repeat the remarks? Let's imagine she was a tape recorder. You say it depends on who heard the tape recorder. Let's imagine Wiseman was the tape recorder. Did she repeat that to anybody? The following day she sent out the letter saying that they'd been terminated for ethical integrity reasons. Jansen himself repeated it to his supervisor, Ahrens. And he, in turn, repeated it to Bishop. It was published because Wiseman heard it, recorded it. It was published when Wiseman heard it, that is correct. That is true. That issue has been resolved several times, I think, in the state of Illinois. That's been addressed. Because there are other states that say no. But in Illinois, as I cited the cases in my brief, that issue has been resolved in favor of the plaintiffs on that specific issue. Yes, that is publication. Would it have been publication because the two employees were there? No, it's publication because it was in the presence of Jerry Wiseman. Let's say Wiseman wasn't there. It would still be publication between those two. So if you hadn't been able to amend to add Wiseman, you could have amended to add the other employee. I believe so. But you didn't. No, I added Wiseman. Well, for one thing, in the complaint, I did one complaint instead of two. And in there, I believe I did say that they were both present. I don't recall exactly if that's true. Am I getting close to the end here? Two minutes. But the defendant's not aware until this new complaint about who they have to, who you're alleging it was published in front of, right? They knew, no, they knew early on. It was not in the complaint itself, but early on in the discovery, they were well aware of it. Because they had the documents themselves. They were aware of who was present in that room. They had the notes that Wiseman took at the time of the meeting. So the defendant, Jansen, I mean, the defendant's agency manager, Jansen was in the room. His assistant, Jerry Wiseman, was in the room. The two plaintiffs were in the room. They took minutes of the meeting, notes of the meeting, and that's the basis for our allegation that Jansen committed maybe a defamatory statement. They were all there. And they were part of the corporation. The corporation knew what they did. It's not like the defendants didn't know what they were doing. It was Jansen himself. And Jerry Wiseman had heard all this. They were the corporation at that point. So, under your theory of the relation back, if there's a meeting, and you refer to the meeting in the original complaint, and you say that it was published with regard to different people, and then finally, as in similar in this scenario, a summary judge was filed, granted, and then a motion to amend is made, and then you bring out other people for the publication aspect of the complaint, and you say it relates back as everybody was aware that these ten people were at the meeting. Well, here's a point I've got to make here. The summary judgment was not granted because there was lack of publication. The summary judgment was granted on the issue of the for cause letter that went out to all the other agents saying that these two had been terminated for cause. And because of presumed qualified privilege in sending notices to the Department of Insurance and to NASD, the judge did not enter judgment, summary judgment, because of lack of publication. I understand that, but I'm saying under your theory of relation back, is if you mention in a broad scope in the first complaint a meeting where there are multiple people there, and you allege the publication as to a particular person at that meeting, and then later on you want to amend it a few years later and say, well, it relates back as we talked about the meeting. And so that would relate back to anything and everything that happened at the meeting, so people were aware of that even though it's now a totally different publication aspect that you're talking about. Well, I don't think it's a totally different publication, because I felt like the original statement was publicized because it was in the presence of them. And frankly, I knew at some point I was aware, obviously, of Jerry Wiseman. But we are talking about the same plaintiffs, the same defendant. There's no new defendant here. There's no new parties. And it's basically the same statement. It all emits from the same statement that my clients were guilty of theft. So it all relates back to the same circumstances. Everything relates back to the same date, same parties, same witnesses. We added one, Jerry Wiseman. That's the only thing that's different. Am I done? Any other questions? Yeah, Mr. Schergen, you have five minutes for the under-prosecutor later. Thank you. Mr. Rager. We're talking about entirely different torts. Again, the question is damage to reputation. There has to be a publication. The question is publication to whom? The statements were different. There isn't time to pull them apart here. But if you compare our briefs where we talk about the summary judgment, why summary judgment was granted, we talk about what those statements were. They were different. Sure, there was some aspects of theft and improper keeping money that was in both. But what they're talking about here was the word theft, which comes out of the Wiseman. Whether that word left the room. Yes. And the answer to your question, and so I was going to work through this. I'll come back to Justice Carter in a second here. But your question was, did Wiseman ever repeat it? And the answer is no. I don't have the volume number here, but we have it in our brief. It's page 81 of Wiseman's testimony. And the question was, after that meeting, did you discuss the content of that meeting with anyone outside the office? And the answer is no. That theft never left the room. I do understand the letter went out later. Yeah. Different publication. Different audience. Different people. And the only thing that's pled here, the only thing that survives summary judgment, is what was told to Wiseman. It is an entirely different tort. Which is a lot of it, Porter. I mean, it seems like the standard is a little looser than what Justice Carter and even Mr. Sperringen has stated. You know, Porter says that in the relationship you can add an illegal theory, there has to be some, you know, it has to be close in time. I don't think that that even requires that you say that it's been talked about or discussed in the previous complaint, as long as it's close and it involves the same parties and the same, you know, set of circumstances, doesn't it? Justice O'Brien, with all due respect, I suggest that the key language of Porter, which would answer your question, is that it has to be close in time and circumstance, and it has to lead to the same injury. And that's a precise quote from Porter. And the injury here is the injury to reputation caused by a publication, and the publication is to Wiseman. That's all that was supposed to be involved in this case, and that's all that was involved in the pleadings. And so it is not the same injury. So in Porter, there were various doctors and various tests, X-rays, CTs, et cetera, which led up to the same injury, which was what happened during the surgery to the plaintiff in this case. But here, we have to keep going back to the basics of the tort, which is damage to reputation. The reputation damage here is what was said to Wiseman, and that's all that was involved. So Mr. Swearengin says, well, look, you know, they knew about it. And Weber answers that question. And Weber says, plaintiff appellant's reliance on the alleged fact that defendant Cuito knew shortly after distribution of the letter to the authorities, which was the first pleading in the case, within the statute of limitations, that the letter was published in the newspapers, misses the point under this interpretation of the law. Under Zay and Wolfe, and Zay is the case which Porter relies on so heavily, defendant must be on timely notice that the publication to the newspapers was the subject of the lawsuit. No such notice has been sent here. Cuito has, or Weber has, a lot more learning for us here. In other words, in the relevant accounts of the amended complaint, plaintiff changed the material element of the cause of action, pleaded in the original complaint, and therefore changed the transaction upon which her case was based. So it didn't arise out of the same transaction. The original complaint transactions were three publications to other entities with other words. And here we're dealing with the separate publications, separate words to a single person. One minute. Pardon me? One minute. Thank you. So in that one minute I would like to very narrowly say one thing about the, one additional thing about the cross appeal, and I don't tend to talk about anything else, so I'm limiting what I want to say here, and that is that the cross appeal has been forfeited here because the original complaint was not replayed in the amended complaint. And under the Supreme Court's very clear opinion in Bonhomme, it must be done. Privilege can be raised either by a 2619A9 motion, which this court knows, or it can be raised by summary judgment. And here it was raised by summary judgment. The first complaint was brought to an end under the Supreme Court's opinion in 2012, I believe, in Bonhomme. It is as if, in dramatic fashion, that complaint has simply disappeared from the record, and I do not believe that there's any jurisdiction on this powerful, nonetheless, court to consider the cross appeal. Thank you very much. Thank you. I believe under the Porter case, this cause of action, the amended complaint, and the cause of action set forth there did relate back for all the reasons. Same time, same individuals, same damages. The damage was the reputation loss. The loss of reputation. The prejudice that was really done here was in the court's ruling on the summary judgment motion that there was no cause of action arising out of these poorly investigated allegations that went out to all the agents, that is, that the parties had been terminated for cause, that they were terminated for ethical reasons, that they were guilty of stealing, that went to the Department of Insurance and to NASD. One of the things that the defendants have been able to argue is here is that there was no repetition and no damage resulting from the allegation of theft, where the allegation of theft led to all of the secondary notices that went out.  Every notice that went out afterwards was a result of Jansen's communication of his allegation of theft to the other parties. Aaron is only known about this because... Your Honor, may I just... I'm loath to interrupt, but I believe this additional time is devoted to, should be devoted to the cross-appeal and all that's being done here is pre-argument. I apologize. I think I am talking about the cross-appeal because it has to do with the prejudice that was done as a result of the granting of the motion for summary judgment because that removed all these other publications from consideration by the jury when they did go to hearings, go to deliberations. Because, number one, I think the trial court was wrong to enter summary judgment on those three issues, the four cause notice, the notice to the Department of Insurance and to the NSAD. I think that was all wrong. Not only that, but the judge didn't allow any evidence that as a result of Jansen's conduct in accusing him of theft, all these other notices went out, which basically ended their careers as agents. Because once it was known that they had been fired for theft, there's no way that they were going to get another job very easily as an agent for another company, insurance agent, when notices went to the Department of Insurance that they had been terminated for theft. That was catastrophic. That never got to the jury. And I raised that issue in my cross-appeal. Those issues never got to the jury. The jury never knew the devastating effect that this allegation of theft had on these two individuals. What about the impact of the Supreme Court cases? When I read that Supreme Court case, I thought that Supreme Court case actually addressed motions to the Smiths, that is, motions on the pleas. Because a summary judgment presumes that your complaint is well stated, states a cause of action. And so when summary judgment is granted on that, that part of the case is over. Now it's not appealable, because the rest of the cases still exist, but it is appealable once the entire case is over. That is, once the verdict was entered, not only the verdict is subject to appeal, but also all the prior orders of the trial court are subject to appeal, including the order for summary judgment. Under that case, when I read that case, that case did not state that allegations in a complaint on which there was summary judgment had to be restated in a successive complaint in order to be considered by the appellate court on appeal. You agree that it was not, though, in this case? It was not restated? The original complaint was not restated? Well, everything was restated except the allegations for the matters that were barred by summary judgment. And not only that, at the trial level, I was not allowed to refer to any of those. Thank you, Your Honor. Mr. Reagan, did you have another question? If not, thank you both for your arguments here today. This matter will be taken under advisement. Your written decision will be issued as soon as possible. And with that, we will stand in a short recess. All rise.